probably up to the third case and I guess you've already been a form and formed in the fourth case that the will allow the use of the exhibit there'll be time to set that up after we take the break so we will start with Platt vs. Winnebago 18-1408 counsel may it please the court counsel good morning your honors today I have the privilege of representing mr. mrs. Platt in this case in January 2016 mr. mrs. Platt bought a $112,000 new Winnebago recreational motor vehicle that came with a one-year warranty what were they what they did not know at the time that they made that purchase but what Winnebago did know is that the vehicle was going to have defects during its first year Winnebago expected that it would have defects the trial court below in the ruling on the motion for summary judgment and dismissing all three claims in this case made the remark that it was expected that there would be significant repairs of these defects during that first year actually there is no evidence that significant repairs were expected at all the word significant doesn't appear any place in any evidence however they buy it in January the facts of this case become extremely important to the ultimate ruling in January in February in March in April in May repeatedly this RV goes into the authorized repair facilities two different dealerships of Winnebago for repairs to be done again and again some problems go away some problems come back new problems different dealerships I'm sorry your honor say two different dealerships to the original selling dealership worked on it and also a dealership here in both before delivery and at delivery what do you mean by at delivery they signed to buy the RV on one day but they could not get it until the end of the day because of repairs that needed to be finished up on it and by the way the warranty was in the RV so they didn't even get that until after they had signed all the paperwork to buy the RV but let me go on of course they could have asked for it I suppose I'm sorry your honor they could have asked for it they could have asked for it signed something that mentioned the warranty that's correct they could have asked for it if they had known there was going to be surprises in it they probably would but they did not know that what we end up seeing is before we end up in court there are almost four dozen different defects that arise in this RV and as I said as we go through this sojourn of six months of repair efforts and repair attempts problems go away come back and new ones arise and at all times Winnebago is actively engaged with the repairing dealerships trying to solve problems apparently not with success come June at that point mr. and mrs. Platt are frustrated to the maximum and so they telephone Winnebago and they explain the problems they explain the difficulties with the dealers and they ask for help Winnebago at that point tells them that they can go to an authorized dealer or they can go to a repair facility that Winnebago has in Iowa where is that in the record exactly what the conversation was with Winnebago that's in the deposition of mrs. Platt okay and that deposition is in the appendix your honor she's told that mr. and mrs. Platt both understand now that they can choose they're in Colorado they decide that rather than go to Iowa they'll try the Colorado dealer here again and so what they do is they telephone and they are then told that the first appointment they can get is the winter which is approximately six to seven months away their warranty expires in January so effectively they're stuck with an RV that they can't use and can't get until the month before they can't use didn't they take a trip in it they did they did but there are problems with the RV that the court will hear about that in that actually made it dangerous and that's the LP gas system there were other problems that prevented them from being able to fully use the RV to with the defects coming up to a total of I believe 44 separate issues in it it's not the same as what they thought they were buying the use of it is certainly far less than what they thought they were paying for and getting but they they call the dealer and they find out that they've got a long wait before they can get in so they call Winnebago back and explain that and then ask what can we do can we have that appointment in Iowa and Winnebago says okay we'll set that up it is important to note that at this point in time Winnebago up to this point has not offered not requested I should say has not requested or demanded that they do anything all that Winnebago has said is that you can take it to an authorized dealer or you can take it to Iowa when the dealer part fell through they turn to the part about the appointment then they find out that their appointment is going to be about three and a half months away but at least that's better than six months this is intended any earlier today delay it in part because of their travel no no the problem the problem was that that was the soonest they could get either way and that is routine in the industry frankly there's always a delay in all of these kinds of RV cases when you try to get repairs it seems but that because there's so many problems with them there's a problem in the industry in terms of qualified competent technicians to get the work done and also the quantity of problems and the quantity of RVs that are being sold it's kind of overwhelming the industry at this point in time it has for about two years so what happens then is that this is in July in June I should say then we move to July in July an attorney letter goes out to Winnebago that tells Winnebago okay these are all the problems this is the history you've breached the warranty and you've committed all of these unfair and deceptive acts and they're all itemized out which of course would be the Colorado Consumer Protection Act that is in July in August wait and in that letter they don't say repair it they say we want our money back that is correct take this Winnebago that is correct they didn't ask about they didn't seek repairs from Winnebago in that letter not at that point no but what Winnebago does happens later and let me first turn to August in the month of August nothing happens come September 1 the RV goes back to the dealer apparently they were able to get it in sooner than expected and it's now at a Winnebago authorized repair facility Winnebago now becomes engaged again trying to get things fixed and on September 1 Winnebago's the evidence of Winnebago's involvement there I'm sorry your honor what is the evidence of Winnebago's involvement in the repairs in September is that just testimony from a Winnebago person or who know the press would not know but what we see in the repair orders which is in the appendix at page 204 it shows the dates when this is occurring in that September time frame parts are being ordered and shipped to the dealer by Winnebago and there are conversations that are occurring and it's specifically notes what do we know about the conversations that are occurring they're all dealing with the problems trying to figure out the gas issue what's the source of that information if you say the repair order show that parts were being ordered where's the information about what was actually communicated between Winnebago and the dealer that also that conversation is also made notes of in the repair orders themselves that are in the appendix including on this page 204 which is the September 1 what we see from the depositions of the dealership people is that when they have conversations they typically type them into the repair order history and so when a repair order is printed out that's part of the history so we can actually read the exchanges and encounters that are occurring between everybody and also when the RV comes in on September 1 with these defects to be repaired on September 1 after the RV is there Winnebago then sends its offer its letter that is the letter that is part of the evidence in dispute in this case in terms of what it means because what the letter says is our settlement offer is it does not say we want you to have it repaired and we will assist it does not say we request that you do this it says our settlement offer is now was there any conversation with the District Court about whether that's admissible as evident in evidence because it is a settlement offer I thought there was some agreement that it really wasn't a settlement offer and that's why it could be considered oh no there was never an agreement that it was not a settlement offer in fact it is a settlement offer and we've always argued it was a settlement offer and then how is it properly evidence before the court I don't think I think that it was admissible not for the purposes of the settlement discussion itself but to show that a communication occurred okay but nevertheless the problem with it is that what it says is our settlement offer remembering back that the first letter from the attorney to Winnebago set forth two claims acceptance of that offer would have destroyed both claims and would have ended any legal rights they might have had what Winnebago should have done in that letter was just simply forget about the word settlement and simply say we request if they had we wouldn't be here Winnebago didn't do that in fact at no point prior to filing this case in court did Winnebago ever say we request that you have it repaired at this dealer or that dealer or we request that you bring it to Iowa did you ever write a letter that demanded that Winnebago repair or replace the Winnebago because of the failure of repairs by authorized service centers no neither did the plats either because they reached a point where they gave up and that is what happens that we're not quite to in the story of the events here because what happens is in a few weeks after that they call the RV is still in the shop remember the repair shop the authorized one for Winnebago then a few weeks passed by it's still there they call and cancel the appointment at the end of the month because it's not even out of the shop that they told they were told they could take it to are you talking about the appointment they had to take to go to Iowa you're correct your honor and so they cancel that and you're saying they canceled it because the Winnebago was still in the shop in Colorado it is still in the shop and they don't know when it's coming out but no what why did they say they canceled the appointment that was well that was behind why they canceled it they canceled it simply because at that point they had given up on the RV and they gave up when it came out of the shop they have more problems a go I'm sorry your honor they'd given up on Winnebago is what they said yes they gave up on Winnebago and the reason is because Winnebago worked to get these repairs done at every dealer all along the way and on this last repair trip when it came out of the shop the two worst defects occurred they came out with problems not fixed and on top of that there now is a water leak that didn't exist before and worse yet the wall in the bathroom was separating from the roof when did they get the Winnebago back from the from the local I believe it was about September 22 and when was the original appointment with Winnebago the original appointment I believe was the 29th I could be wrong on the September 29 so but you just said that the reason they didn't take it to Winnebago was because it was still being worked on locally that was on September 14 they canceled that appointment not knowing when they were going to get it back out of the shop the central argument in the lower court circled around this idea of what I call the Winnebago has consistently argued that Winnebago never has to ask a customer to have a repair done or bring it to Iowa that the burden is on the customer to make that request but looking at the plain language of the warranty I would submit that that is not accurate in the warranty at one point it does say Winnebago has to be given an opportunity to repair before you can claim a breach and the next sentence I believe it then turns and says that Winnebago may instruct you may instruct the owner and that's but that's in the context of after there's a written demand from the owner of the RV isn't that correct correct and there was no written demand I'm sorry your honor but the Platts never made a written demand to Winnebago for repair replace on the basis that the service center they've been taking it to had not affected the repairs that's correct Winnebago was never demanded by the owners to do a repair other than constantly going to have repairs done and requesting repairs to be done counsel yes you you have claims for breach of express warranty you have a claim for breach of implied warranty I have a question about the latter yes you argue that fulfilling the repair protocol in the in the new vehicle limited warranty is not a precondition to sue for breach of implied warranty correct okay so my question is why isn't the first sentence in the warranty which states that it is the sole and exclusive warranty applicable to this touring coach bar your implied warranty claim by operation of law they get an implied warranty then we turn to look at what is the effect of that and the clause actually that you're referring to your honor is a limitation on remedies it's not a limitation on the existence well it says so an exclusive warranty it does say that in the express warranty part and that's true for an express warranty it doesn't it doesn't say it doesn't it doesn't limit the exclusion to express warranty it says sole and exclusive warranty that's correct but by operation of law they get my operation of what law what law are you referring to I believe this specific statute is cited in the brief your honor I don't have it at hand at this mass mass Magnuson law no then what law are you referring to that be the Colorado statutes Colorado statute I believe that's correct you're all right what about the in the motorhome buyers order it states except for any written manufacturer's limited warranty I mean I may receive all other warranties expressed or implied including the implied warranties of merchant ability and fitness for a particular purpose are excluded from this transaction why doesn't that bar your implied warranty claim because that is an agreement between the selling dealer and the buyer in this case in fact that contract is only working between them doesn't apply to Winnebago does not apply to Winnebago did you raise did you raise the implied warranty claim in the district court no it was not waived by us we asserted it separately in addition to asserting the Colorado Consumer Protection Act separately you mister in the district court I'm sorry you asserted it in the district court yes we asserted that as claimed to in the district court but never argued it no it was argued in the briefs and in the motion to your honor and the trial judge at that point turned and decided that for the same reasons that the repair opportunity question in the trial courts mind defeated the express warranty the trial court then took that and literally inserted it into a statutory implied warranty and said that it defeated it there too the last thing I want to your I see my time is almost up I would reserve the red light means you've gone over a minute and a yes your honor thank you I just did you have any other questions did you have any more questions may it please the court my name is Tom Rice and I represent Winnebago Industries if I could let me start with judge Hart's questions about whether or not the plats ever sought repair and replace remedy through Winnebago in fact they did not so when the lawyer came on the scene via the letter dated July 29 2016 from that point forward there was no further request from the plats for Winnebago to effectuate any repairs and in fact what ultimately happened was they of course canceled the appointment had been made but if we could take it step back from that and go just a month earlier I think the record is very clear that Winnebago was never contacted by the plats until sometime in early June of 2016 regarding their frustrations with the repairs that were being performed by the authorized service center and I believe the correct date is that the first call came in on June 9 of 2016 and there was this discussion about what we also have other service centers in your area you might want to try one of those Ms. Platt apparently then checked on that service center and came back to them then on the 13th of June of 2016 and expressed again that she thought she couldn't get an appointment until the winter and so at that point on June 13 four days after being contacted Winnebago had set an appointment for the the plats to bring their vehicle to the factory in Iowa on September 26th of 2016 so any suggestion that Winnebago was not responding in a way that collided by the record. What's undisputed in this case is that Winnebago as opposed to one of its authorized service centers was never given the opportunity to repair or replace the defects that were claimed by the plats and what's tragic here is is that the parties were on their way to fulfilling the two-step process that's identified in the warranty where you first take it to an authorized service center and then if you believe that those repairs fail or if they're in any way inadequate then you come to Winnebago. Now as Judge Hartz points out there was never any written demand for such as is required but nonetheless when the Winnebago received the contact from the plats they went ahead and started the process the two-step process of bringing the vehicle to Forest City so that Winnebago as the experts could have the opportunity to repair and if you think about it this whole thing makes a Most repairs are going to be effectuated by the authorized service centers but every once in a while things get more difficult or more complicated and that's where the experts that's where Winnebago is available to perform this and it's a necessary part of the contract. When did they first offer to do it at their expense was that not until January after the lawsuit was filed? No I don't think that's correct I think it was always offered is at the expense of Winnebago. I would not be covered by Winnebago and the record will reflect that all those repairs that were being performed according to plats unsatisfactorily those were all paid for by Winnebago as authorized warranty work. But what happened here what broke down this two-step process is the plats unilaterally canceled their appointment. So the question of this case becomes what's the upshot of that what is the net result of them walking away from the and our view is that under the plain meaning of the contract the result is that they void their warranty. Now various arguments have been made for a different meaning and a different outcome but to me they're just strained readings of the language and here's I think the simplest way to put it. If we look at the provision in the warranty it very clearly delineates a distinction between an authorized service center and Winnebago. There's no confusion whatsoever and that these are two different ideas within the warranty the first being the first step in it and then Winnebago being the second step in it. The second thing that's very clear is that if we take out this two-step process and if we simply as the plaintiffs would have it make Winnebago synonymous with the authorized service center then Winnebago would never have any opportunity to repair the vehicle and that entire paragraph would be simply read as meaningless. There would be no meaning left in that paragraph if the first time the plats took it to the authorized service center that would fulfill their obligation under warranty. And you know these this provision this two-step process as we can see in some of the cases that are cited this is not a unique kind of provision this is something that's used in other product settings as well there's the Asp versus Toshiba case which I believe has to do with a video recording device and then there's the Scott versus Honeywell case which deals with a I think an alarm type device and in both circumstances the very same two-step process. Now the other thing that I just wanted to address if I could is that the claim is made that the plats were never made aware of the new vehicle limited warranty and therefore it doesn't form a basis of the contract and that's just simply not consistent with the facts. Mrs. Platt signed the buyer's order which references explicitly the existence of a written warranty and says it will be made available upon request. She in fact acknowledges that they discussed the warranty and acknowledges that she didn't ask to see it because she felt in her words very trusting. In addition to that Mr. Platt signed the vehicle registration document which specifically references the new vehicle limited warranty and says that has been provided and in fact we know it was in the very vehicle that they received so the suggestion that they didn't receive or know of the existence of the new vehicle limited warranty simply is belied by the facts and they have ultimate they had multiple opportunities to review it if they chose to. So those are the comments I had I'd be happy to address any questions that the court might have. I have a question. Yes sir. Your chief argument is they didn't follow the the process for invoking the warranty provisions but say they say that they had done it. Does it not concern you that someone who buys a summer that's the purpose for spending the $100,000 plus and it's not getting fixed and the scheduled appointment from Winnebago is three months later. That can't be good. Yeah I would agree that that kind of delay is not good but I would also suggest the court that there's no real record as to why there was that delay. In other words is that because they weren't available to bring it to Forest City first or that it wasn't available through Winnebago. I do know that the appointment was made and this would have been inside of what eight months of receipt of the vehicle and within a few months of when Winnebago was first given notice. But I don't think it changes the record. Does that show that September late September was the earliest? I don't think that's right. I don't think the circumstances as to why that date was selected is in the I looked at the chronological list is unbelievable. Yeah and Judge Seymour certainly I'm happy to answer your question but I will first note that there's no record of that in this case but the answer to that is no. That Winnebago does not have these kinds of difficulties with its vehicles and you know they Winnebago has as much interest in making sure these things work properly as anybody else because it's their brand name. They're the ones that are marketing these products and trying to sell them to other customers. So I with Judge Hart's that Winnebago has a great interest in making sure that these issues are addressed and so we think we try to. Is it fair to say counsel that the Platt's got a lemon in this Winnebago? I don't know because that part of the case has never been tried and determined. Well as you can tell from my questions to the opposing counsel I'm interested in the implied warranty claim. Do you contest whether the RV was fit for ordinary use? Yes but that was not tried in the case. I mean we had this on summary. Isn't that the test for an implied warranty of merchantability? That it's fit for use yes I agree. Well okay then let me get to the same question. Sure. I asked fulfilling the new vehicle limited warranty opportunity to repair requirement a necessary precondition to bring a claim for implied breach of implied warranty? Because the warranty provides there can be no action for breach until they've given the opportunity. And where in the law is Winnebago allowed to set that precondition? In other words that that there can be no claim. Under 719 the remedy. Under 719 of what? What are you referring to? 42-719 of the Colorado revised statutes provides that they can modify the remedies. A remedy isn't that you can you can limit remedy but that doesn't necessarily eliminate the possibility of liability. Remedy is different from liability. No I understand that your honor but there can be no breach under this contract until Winnebago has been given the opportunity to repair. Well that's my question. You think that that stated in? I do. Where? It's it's right in the warranty. That's what I'm asking. Okay. And Winnebago has given an opportunity to repair the motorhome prior to claiming a breach of this warranty. Yeah this warranty. Doesn't this warranty refer to the express warranty? How does that have anything to do with an implied warranty? No I don't agree with that. I think this. I know you don't but why? Because. Yes sir. The I think that this warranty very clearly refers to the new vehicle limited warranty which includes the limitation on remedies having to do with implied warranties. Well I'm still not understanding how a limitation on a remedy eliminates a claim for liability. Because the remedy is two two stage. The repair or replace. That's stage one. Stage two is if they either can't or don't repair or replace then you can get money damages in the amount equal to the cost of effectuating such repairs. Okay. They cut us off from having to be able to provide the first part of that war. Okay I think I'm starting. I mean I think I'm starting to understand your argument. Let me just make sure I am. Yes sir. So are you saying that the opportunity to repair and replace is built into the Okay. I think I'm I think I'm following you. But I noticed there is a provision in Magnuson Moss 15 USC 2308 that actually limits the ability of a firm like Winnebago to disclaim or modify a claim for implied warranty. Are you familiar with that provision? Well I but I don't think that applies to limited warranties. Why not? Because that's Magnuson Moss doesn't speak to remedies for limited warranties only to full warranties. And so then the case law provides that therefore you look to the state remedies. I see. So so there's a distinction between limited and full. Yes sir. And what you're saying is that provision only applies to full. I believe that's correct. All right. Thank you. I thought let me see if I'm correct here. I thought part of your argument was that the first sentence of the warranty which says this new vehicle limited warranty is the sole and exclusive warranty applicable to this touring coach etc. Yes sir. That is I thought that was excluding. Yes sir. Implied warranties. Yes and as eloquently stated by Judge Matheson. Okay. Yeah I agree with his position on that. By the way I'm not taking a position. Oh no you're just asking questions. I'm asking questions. I'm trying to understand your understanding. As the question suggested from from his honor that that is our position. Thank you. All right. Thank you. Case is submitted. Counselor are excused.